Cuma, per Butler, J.
This case presents rather a novel than a difficult question; which, however, from the importance of its consequences, demands serious consideration. It is one which, I think, can be satisfactorily decided on authority. At least, I am relieved from apprehension, from that consideration. With this belief, I shall proceed to consider, and sustain my judgment by authority, on the following positions: 1. Was the prisoner ever charged and put on his trial, on a sufficient and valid indictment ? 2. If not, was his life in jeopardy at any time? 3. Would an acquittal on such an indictment have been effectual to protect him from a conviction on another and valid indictment? 4. When it was apparent from the proceedings themselves, that neither a conviction nor an acquittal would have availed him any thing, had not the judge the right to arrest the proceedings and detain the prisoner for a regular and legal trial ? The recital of the indictment would present the statement of facts upon which the circuit judge decided, to wit: that “We, the grand jurors, sitting as the inquest of Kershaw District, on Monday, the 22d day of October, 1838, do present, that Franklin H. Ray, on the 24th day of the same month, did murder,” &c. ' I say that this *4 would appear, because' the recital in the caption can always be made to conform to the truth. The names of the grand jury can be inserted, and the day of the term in which they are in session, and upon which they find their bill. This can be done at any time, without altering or in any wise interfering with the material and essential allegations in the indictnrent. Before the paper containing the criminal charge is handed out to the grand jury, it is called “ a bill of indictment.” After it is found, and all the blanks filled up, it is called “ an indictment.” — 2 Hawk. ch. 25, sec. 1. When it is thus made perfect, it must be decided to be valid or invalid, according to the requirements of the law. A legal trial depends on the sufficiency of the indictment, as there can be no trial without an indictment. A trial without an indictment would be illegal and void. The question, then, in this case is, was the prisoner ever put on a legal trial ? and that must depend on the sufficiency of the indictment, as found by the grand jury. The grand jury have undertaken to say that the prisoner was guilty of a crime, two days in advance of the day on which they found their bill. They have, as it were, looked into the future by divination or conjecture, and have said that an individual was guilty of a crime before the day arrived on which it was committed. It may safely be said that no human tribunal has cognizance of the future: that alone • belongs to Deity. I take it, that if a grand jury were to proceed on obvious probability, they could not present an offence an hour in advance of that on which they were sitting — much less a day, or a week, or a month. Their jurisdiction extends only to the past. An indictment ought, and can alone be found in the same district where the offence was committed. And by the stat. 10 Henry VI. 12, if a place be alleged, and there is no such place, the indictment is void — 4 Com. Dig. 671. If a grand jury sitting in one district were to find that an offence had been committed in another, their finding would be bad, upon the ground that they had gone beyond their jurisdiction. This position is clear. By alleging the offence to have been committed at any particular place within their jurisdiction, I suppose the indictment would have been good. The same principle may be applied to the time when the offence is alleged. If the time laid *5 in the indictment is antecedent to the finding, in general it is not material that the offence should be proved to have been committed either before or after the time laid — provided it was a reasonable time before the finding of the grand jury. Jurisdiction may, however, be as well limited by time as place. Suppose this extravagant case: — that an offence was alleged to have been committed one thousand years back; could the tribunals of the United States, whose territory was not then discovered, take cognizance of it? Narrow the time to a nearer period, but one before which the people of the United States had any existence. Let it approach still nearer our own existence as a state, but before it was settledl In such cases, the offence would appear to be impossible, from the time laid, so far as any legal tribunal could take notice of it. State the time one day forward, and it would be equally impossible, that any human power could say that an offence could be committed. Time, then, sometimes, as well as place, may show a want of jurisdiction and legal competency to take notice of an alleged offence. The concession, both of the solicitor and of the counsel for the prisoner, may be adopted by the court— that the indictment on which the prisoner was arraigned, was defective and insufficient to sustain a legal trial. 2. The prisoner’s life cannot be put twice in jeopardy; and the question arises, 'was his life legally put in jeopardy by his arraignment on an insuf^ ficient indictment? I adopt the proposition of Mr. Justice O’Neall, in his well-sustained opinion in the case of the State v. McKee :* “ Jeopardy of life is when one is put upon his trial upon a valid indictment for a capital offence; it may result in his condemnation, hence he is in jeopardy.”^ The prisoner, Ray, never was on his trial, unless there was a good indictment, and therefore no judgment could have been pronounced on. a verdict of conviction. From the time his trial commenced, it was a.mere form that could not have resulted in his condemnation. This point need not be elaborated, as it was conceded in argument that the prisoner was in no jeopardy. The 3d proposition was thought to be more doubtful, and it was said that although he was in no danger from *6 a verdict of conviction, that he might have been benefitted by an acquittal; and that he should not have been deprived of the advantage of his position. 1 am entirely satisfied, from unquestionable authority, that an acquittal would have availed him nothing, so as to be pleaded in bar, to another trial on a good indictment. I have thoroughly examined the authorities on this point, and the general proposition maybe thus stated:—When one has been tried and acquitted on a bad indictment, he may be tried 'again. In the 2d vol. of Coke’s Rep. part iv. p. 44, the case of Yaux is reported. The prisoner was indicted in the King’s Bench, of voluntarily poisoning one Nicholas Ridley. The defence was, “ that the prisoner had been tried and acquitted of the same offence; the proceedings and former indictment are set out. It was resolved by the court that the first indictment on which he was arraigned and tried was insufficient, and principally because it was not alleged expressly in the indictment that the said Ridley received and drank'the said poisonbut that the words which implied merely a receipt of the poison were not sufficient to maintain the indictment. It was further resolved by the justices, that the reason of auterfoits acquit was, because, where the maxim of common law is, that the life of a man shall not be twice put in jeopardy for the same offence, and that is the reason and cause that auterfoits acquitted or convicted of the same offence is a good plea, yet it is intendable of a lawful acquittal or conviction; for, if the acquittal or conviction is not lawful, his life was never in jeopardy; because the indictment in this case was insufficient, and for this reason he was not legitimo modo acquietatus.” * Since this case, its principle has never been questioned in the English courts: on the contrary, it has been recognized and acted on in a number of subsequent cases as unquestionable. Indeed, in all the subsequent cases that I have looked at, it is assumed as a certain *7 point on which they were to rest. — See the following cases: Vandereomb and Abbot, Ea, Cro. Law, tit. Burglary; The King v. Emden, 9 Ea. 439; 3 Pr. Wm., 439 to 499. — The 4th proposition may be sustained without calling into question any extraordinary exercise of discretion on the part of the circuit judge. It seems to me that it was matter of indifference to the prisoner, whether the proceedings were arrested or not. If the indictment was void, all the proceedings founded on it were a nullity, and cannot be sanctioned by the mere forms and ceremonies of an arraignment. The case might be considered properly as standing on a motion to quash a void indictment, or to withdraw from the jury a paper that was not in fact an indictment. If the indictment was good, the judge was wrong, and the prisoner was entitled to his discharge, because he was once in jeopardy. The exercise of the discretion of a judge in such a case, never could operate to the prejudice of the prisoner. Consider the case, however, as it actually was — and perhaps it should be so considered — that the prisoner was arraigned on a void indictment, whose defects appear palpably on its face, showing that the prisoner was charged with an impossible offence, did the circuit judge exercise an unauthorised jurisdiction in discharging the jury from the further consideration of the case 1 In general, when a jury is charged with a case, it cannot be discharged without rendering a verdict. This general proposition is subject, however, to many exceptions, and juries may, in many cases, be discharged without giving a verdict. Mr. Justice O’Neall has pointed out many cases in his opinion above referred to. In all the cases on this point, the judges have given their opinions on the assumption that the jury had been regularly charged on a legal indictment. In none that I have examined, has the question arisen on an invalid indictment. Discretion becomes dangerous in proportion as it may become despotic and mischievous; and when no valid judgment can be rendered, I cannot see the danger of a judge exercising a discretion to prevent one being rendered at all. It amounts to nothing more than quashing the indictment, and ordering the prisoner to stand a legal trial, and places him in no worse or better situation than if he had been convicted or acquitted. It was in the power *8 of the prisoner to have obviated any of the consequences of such order, if he apprehended it would operate prejudicially. He could have consented that the record should have been amended. To say that it would be in the power of a prosecuting officer, either to oppress or aid a prisoner, by an irregularity-in the indictment, would be but to say that a dishonest and designing officer, similarly situated, could always effect his purpose in other and more effectual modes. From the time that the. defect was discovered in the indictment, was it not worse than a mockery to carry on the trial ? To put it on .no higher ground, it would have been an act of supererogation on the part of the court. It could have availed nothing but to let the parties witness the development of the testimony. It would have been to use the court for a purpose for which it was not constituted. I never would allow the judge to look beyond the recqi’4 for any cause to arrest the trial; nor in general should he do so, but in palpable and flagrant cases of defect in the indictment. Not that the prisoner would suffer by it; for any mistake of the judge would always operate in his favour. There are many admitted occasions on which a judge must exercise his judgment to discharge a jury. If he were disposed to be corrupt, he could exercise this discretion without the power of control or correction. He must always judge of the necessity — such as his own, or the illness of others concerned in the trial.- The remarks against a judge’s power to discharge a jury after the arraignment of a prisoner, have been levelled at its abuse, and not its existence. Mr. Justice Foster, in the introductory remarks of his judgment in the' case of Sir John Wedderbourn, says, as to the power of a judge to discharge juries in capital cases: “ The question is a point of great difficulty and mighty import, and I take it to be one of those questions that are not capable of being determined by any general rule, that hath hitherto been laid down, or possibly ever may,” &c. “ For I think it impossible to fix on any single rule which can be made to govern the infinite variety of cases that may come under this question, without manifest absurdity.” Chief Justice Tilghman makes a similar remark in the case of the Commonwealth v. Cook and others,6 Serg. & Rawle, 577, and concludes by saying *9 that “ Judges have therefore thought it safest to decide from time to time the cases that have'been brought before them, taking care not to commit themselves on general principles.” So far from laying down a general rule, I have avoided it; and wish to be understood as restricting myself to the particular case under consideration. I am satisfied, under the very peculiar and extraordinary state of the facts of this case, and the glaring.defect of the indictment on its face, that the jury ought to have been discharged. I would have the indictment to present the whole case; but here it contains a charge of an impossible offence, or one that the court could not take notice of. It involves no higher power than that the judge should judge of his jurisdiction. Let it not be understood that I would allow a judge to resort to any but a conceded state of facts, for his determination, appearing on the paper itself.
Note. — In the case of the State v. Dandy, 1 Brev. R., 395, the prisoner was indicted for a misdemeanor in compounding a felony. The felony stated in the indictment, was for passing a counterfeit bank-bill, which was charged to have been committed on the fifth day of November, 1802. The indictment then stated, that “ afterwards, to wit, on thé first day of June, 1800,” the said felony was compounded. The'prisoner was found guilty, but afterwards moved in arrest of judgment. By the Court: The indictment is absurd. It is impossible that the defendant can be guilty of the offence as charged. Judgment arrested. R.
Smart, for the motion.
Withers, Sol., contra.
It is the judgment of the court that the motion be dismissed.
Richardson, Evans and Earle, Justices, concurred.
O’Neall, Justice, was not present at the argument, but concurred in the judgment, as pronounced in the above opinion.

 1 Bail. Rep., 651.